# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JAMES RICHARD DUDLEY,

    *Petitioner,*

vs.

    Case No. 15-3243-EFM

STATE OF KANSAS,

    *Respondent.*

## MEMORANDUM AND ORDER

In 2008, Petitioner James Richard Dudley was convicted of one count of aggravated battery and two counts of battery on a law enforcement officer. He was sentenced to 226 months in prison. Dudley petitions this Court to issue a writ of habeas corpus under 28 U.S.C. § 2254. He argues that his state convictions are unconstitutional because ineffective assistance of counsel precluded him from receiving a fair trial. In addition, he argues that his sentence was unconstitutional because his prior juvenile adjudications were improperly used to enhance his sentence. Having carefully reviewed the record, the Court denies Dudley's petition for a Writ of Habeas Corpus.

### I.    Factual and Procedural Background

In 2007, James Dudley was charged with aggravated battery and aggravated burglary. Shelley Bock was appointed to represent Dudley on those charges. In 2008, Dudley entered a

plea of no contest to one count of aggravated battery and two counts of battery on a law enforcement officer. The Douglas County District Court found Dudley guilty and sentenced him to 226 months in prison. Dudley claims that his sentence was enhanced because of his prior juvenile convictions that were not tried before a jury.

Dudley's convictions were affirmed on direct appeal by the Kansas Court of Appeals, and the Kansas Supreme Court denied review. Dudley proceeded to seek a writ of habeas corpus in state court, pursuant to K.S.A. § 60-1507. Dudley's motion for habeas relief was denied by the district court, and he appealed to the Kansas Court of Appeals. The Court of Appeals reversed and remanded the case to the District Court for further proceedings.[1]

The district court held an evidentiary hearing and made the following findings. Bock, who had represented Dudley in the past, was appointed to represent Dudley on his 2007 charges. Bock testified that given his criminal history and the nature of the offenses, Dudley was facing a maximum sentence of over 700 months as initially charged. Early in the 2007 proceedings, Bock had some concerns about Dudley's mental condition. Accordingly, he requested a competency evaluation, which was granted. The examiner found that Dudley was able to understand the nature of the proceedings and was able to assist in making his defense.

In preparing their defense, Dudley and Bock discussed the defense of mental disease or defect. Bock told Dudley that based on the results of his competency evaluation, there was no basis for raising such a defense. Bock based this decision on the circumstances of the offense, his evaluation of the evidence, his discussions with Dudley, Dudley's demeanor, and the findings made by the competency evaluator. Bock relied on the competency evaluation even though he

---

[1] *See Dudley v. State*, 2012 WL 1072812, 272 P.3d 1287 (Kan. Ct. App. Mar. 23, 2012) (unpublished table opinion).

was aware that the examination did not directly address Dudley's mental state at the time of the offense.

At the evidentiary hearing, Dudley claimed that Bock told him that the insanity defense had been abolished in Kansas.[2] Dudley testified that he did not function like a normal person, but failed to elaborate. Dudley had told Bock he was suffering from a mental disease and defect when he committed the crime in question. But ultimately, in light of his review of the facts of the case, his 30 years of experience practicing criminal law, and the competency report, Bock determined that he could not raise a viable defense of mental disease or defect. Dudley then agreed to enter a plea of no contest, believing that he did not have any defense to the charges. He pleaded no contest to one count of aggravated battery and two counts of battery on a law enforcement officer, and was sentenced to 226 months in prison.

Based on this evidence, the District Court denied Dudley's request for habeas relief. The Kansas Court of Appeals affirmed the District Court's ruling.[3] The Kansas Supreme Court denied review. Dudley now petitions this Court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## II.     Legal Standard

The Court's consideration of a state prisoner's collateral attacks on state criminal proceedings is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"),

---

[2] Bock was correct. Kansas has not had the traditional insanity defense since 1995, when it was abolished by the Kansas legislature. *See generally State v. Pennington*, 281 Kan. 426, 132 P.3d 902 (2006). But a defendant could still present a defense of mental disease or defect to show that he lacked the mental state required as an element of an offense. *See State v. Barnes*, 293 Kan. 240, 264, 262 P.3d 297, 313 (2011).

[3] *Dudley v. State*, 2014 WL 5849262, 337 P.3d 73 (Kan. Ct. App. Nov. 7, 2014) (unpublished table opinion).

which "requires federal courts to give significant deference to state court decisions."[4] The Court can only grant relief to a petitioner's claim that has been decided on the merits in state court if the state decision: (1) was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[5]

A state court decision is contrary to Supreme Court precedent when: (1) "the state court applies a rule that contradicts the governing law set forth in [a United States Supreme Court] case" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[6] A state court's decision is an unreasonable application of Supreme Court precedent if "the state court identifies the correct governing legal principle from Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."[7] Thus, this Court may not issue a writ of habeas corpus simply because it "concludes in its independent judgment that state court's decision applied clearly established law erroneously or incorrectly. Rather, that application must be unreasonable."[8]

---

[4] *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).

[5] 28 U.S.C. § 2254(d)(1) & (2); *Lockyear v. Andrade*, 538 U.S. 63, 70 (2003).

[6] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

[7] *Williams*, 529 U.S. at 413.

[8] *Id.* at 411.

### III.   Analysis

Dudley argues that he was denied his Sixth Amendment right to the effective assistance of counsel because his attorney failed to pursue a mental disease or defect defense in his case. He also contends that the use of his prior juvenile convictions to enhance his sentence violated Supreme Court precedent set forth in *Apprendi v. New Jersey*[9] because he was not found guilty beyond a reasonable doubt by a jury in his juvenile cases.

**A.  Ineffective Assistance of Counsel**

In *Strickland v. Washington*,[10] the Supreme Court established a two-part framework for evaluating claims of ineffective assistance of counsel.[11]  Under the *Strickland* standard, Dudley must show: "(1) trial counsel was deficient, i.e. 'counsel's representation fell below an objective standard of reasonableness'; and (2) the deficiency prejudiced his defense, i.e. 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "[12]  Failure to show either factor is dispositive.[13]

"There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance'; the [petitioner] bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."[14]  Further, the Court must apply the above standard "through

---

[9] 530 U.S. 466 (2000).

[10] 466 U.S. 668 (1984).

[11] *Bonney v. Wilson*, 754 F.3d 872, 881 (10th Cir. 2014).

[12] *Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008) (citing *Strickland*, 466 U.S. at 688-94.)

[13] *Byrd v. Workman*, 645 F.3d 1159, 1167-68 (10th Cir. 2011) (citing *Strickland*, 466 U.S. at 697).

[14] *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688-89) (internal citations omitted).

AEDPA's deferential lens."[15] "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."[16] "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."[17] Thus, the Court will only grant habeas relief if the state court unreasonably applied the *Strickland* standard in determining that Dudley's Sixth Amendment rights were not violated.[18]

Applying the *Strickland* standard, the state court found that Dudley's counsel acted reasonably, and thus, his Sixth Amendment rights were not violated. This Court agrees and finds that Dudley is not entitled to habeas relief because the state court reasonably applied the *Strickland* standard.[19]

As the state court found, the record shows that Bock was well equipped to represent Dudley. Bock had known Dudley for about eight years and had decades of experience as a criminal lawyer. Bock was familiar with both Dudley and the defense of mental disease or defect—he would have been well suited to determine whether such a defense was viable in this particular case. And although the competency report did not address Dudley's mental state at the time of his offenses, it would certainly provide a general insight into Dudley's mental condition.

---

[15] *Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014).

[16] *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

[17] *Id.*

[18] *Frost*, 479 F.3d at 1225.

[19] The state court also found that Dudley failed to show that he was prejudiced by Bock's representation. Because Bock's representation was reasonable, the Court need not consider the issue of prejudice. However, it is worth noting that Bock was able to negotiate a sentence of 226 months for Dudley, who was initially facing a potential sentence of more than 700 months.

Ultimately, the record shows that Bock's decision not to raise a defense of mental disease or defect was a well-informed, strategic decision. "Whether to raise a particular defense is one aspect of trial strategy, and informed 'strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong.' "[20]

Bock's decision to pursue a plea deal, rather than attempt to raise a defense of mental disease or defect, was reasonable and based on extensive experience and review of the facts surrounding Dudley's case. Accordingly, the state court reasonably applied the *Strickland* standard. Dudley's Sixth Amendment right to counsel was not violated by Bock's representation.

### B. Prior Juvenile Convictions

Dudley's sentence was enhanced in part due to his prior juvenile convictions.[21] Dudley argues that under *Apprendi v. New Jersey*,[22] his juvenile convictions should not have been used to enhance his sentence because he was unable to have those cases tried before a jury.[23]

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[24] There has been some dispute as to

---

[20] *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (quoting *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002)).

[21] At the outset, there is some dispute as to whether Dudley exhausted this claim as required. *See, e.g.*, *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("[A] state prisoner must normally exhaust all available state judicial remedies before a federal court will entertain his petition for habeas corpus."). But the Tenth Circuit has definitively rejected the substantive argument that Dudley advances here. Given the clarity of the controlling law and the Court's preference to decide cases on the merits, the Court need not consider whether Dudley exhausted this claim.

[22] 530 U.S. 466 (2000).

[23] *Id.* at 490.

[24] *Id.*

whether a prior juvenile adjudication for which there was no right to a jury trial qualifies as a prior conviction, and thus, is an exception to *Apprendi*.[25] The Tenth Circuit has remained silent on the question of whether a prior juvenile adjudication can be characterized as a a prior conviction under *Apprendi*.[26] But Kansas courts have addressed this question. Under Kansas law, a prior juvenile adjudication, even if it was not tried before a jury, is a prior conviction under *Apprendi*.[27] The Kansas Supreme Court reaffirmed this position even after it later held that juveniles had the right to trial by jury.[28]

Although the Tenth Circuit has been silent on the issue of prior juvenile convictions under *Apprendi*, the question in this case is not what the Tenth Circuit would rule. Rather, the standard is whether Kansas' interpretation is contrary to, or involved an unreasonable application of, Supreme Court precedent. The Tenth Circuit has considered the reasonableness of Kansas's application of *Apprendi*, and held "Kansas's use of [a] prior juvenile conviction is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent."[29] Accordingly, Dudley is not entitled to habeas relief on the ground that the use of his prior juvenile adjudications to enhance his sentence was unconstitutional.

---

[25] *Compare United States v. Burge*, 407 F.3d 1183, 1191 (11th Cir. 2005) ("[W]e are persuaded that [the Defendant] received the totality of constitutional protections due in his prior juvenile proceeding."), *and United States v. Jones*, 332 F.3d 688, 696 (3d Cir. 2003) ("A prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for *Apprendi* purposes."), *with United States v. Tighe*, 266 F.3d 1187, 1194 (9th Cir. 2001) ("Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within *Apprendi's* "prior-conviction" exception.").

[26] *Gardner v. McKune*, 224 F. App'x 594, 598 (10th Cir. 2007).

[27] *State v. Hilt*, 273 Kan. 224, 236, 42 P.3d 732, 740 (2002) ("[T]he *Apprendi* exception for prior convictions encompasses juvenile adjudications.").

[28] *See State v. Fischer*, 288 Kan. 470, 475, 203 P.3d 1269, 1273 (2009); *In re L.M.*, 286 Kan. 460, 473, 186 P.3d 164, 172 (2008).

[29] *Gardner*, 242 F. App'x at 598; *see also Harris v. Roberts*, 485 F. App'x 927, 930 (10th Cir. 2012).

### IV. Conclusion

After carefully reviewing the record, the Court finds that the Kansas Court of Appeals' ruling was not an unreasonable application of United States Supreme Court precedent. The record shows that Dudley was afforded effective assistance of counsel and the use of his prior juvenile convictions to enhance his sentence did not violate any of his constitutional rights.

**IT IS THEREFORE ORDERED** that Dudley's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 29th day of September, 2016.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE